1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSE MACIEL and ELVIS BONILLA, on        No. 1:17-cv-00902-DAD-SKO
     behalf of themselves and all others
12   similarly situated, and as "aggrieved
     employees" on behalf of other "aggrieved
13   employees" under the Labor Code Private
     Attorneys General Act of 2004,           ORDER DENYING PLAINTIFFS' MOTION
14                                            FOR PRELIMINARY APPROVAL OF
                        Plaintiffs,           CLASS ACTION SETTLEMENT
15
             v.                               (Doc. No. 9)
16
     BAR 20 DAIRY, LLC, a California limited
17   liability company, and DOES 1 through 50,
     inclusive,
18
                        Defendants.
19

20          This matter came before the court on April 5, 2018, for hearing on plaintiffs' unopposed

21   motion for preliminary approval of class action settlement. (Doc. No. 9.) Attorney David G.

22   Spivak appeared on behalf of plaintiff Jose Maciel, and attorney Eric B. Kingsley appeared on

23   behalf of plaintiff Elvis Bonilla. Attorney Jared Hague appeared on behalf of defendant. At the

24   hearing, the court raised several concerns about the proposed settlement and directed plaintiff to

25   file supplemental briefing. (Doc. No. 13.) Plaintiffs filed supplemental briefing on August 28,

26   2018, including a revised settlement agreement ("Third Amended Settlement"). (Doc. No. 31.)

27   For the reasons set forth below, plaintiffs' motion for preliminary approval of class action

28   settlement will be denied without prejudice.

                                                1

## BACKGROUND

Defendant Bar 20 Dairy, LLC (hereinafter "Bar 20") engages in the business of dairy farming in Kerman, California. (Doc. No. 9-1 at 9.) Defendant employed plaintiffs as "milkers," whose responsibilities included milking the cows, monitoring the health conditions of the cows, maintaining and cleaning the corrals, cleaning the farm, painting the scales, inseminating the cows, delivering the calves, and assisting in the defendant's veterinary clinic. (*Id.* at 9–10.)

Plaintiff Maciel filed his original class action complaint against defendant on February 11, 2015 in Fresno County Superior Court, alleging various labor violations under California law. (*Id.* at 10.) Plaintiff Bonilla filed a separate class action complaint against defendant on March 26, 2015, also alleging labor violations under California law. (*Id.* at 11.) The parties in both actions agreed to attend a global mediation with Hon. Howard R. Broadman (Ret.) on November 9, 2015, and agreed to stay all formal discovery pending completion of mediation. (*Id.*) At the mediation, the parties successfully reached a settlement. (*Id.*) As part of the settlement, the parties stipulated to permit plaintiffs Maciel and Bonilla to file a consolidated state court action, which they did on April 14, 2016. (*Id.*) On April 27, 2016, plaintiffs filed a third amended consolidated complaint, presenting the following causes of action: (i) failure to pay overtime; (ii) failure to provide rest periods; (iii) failure to provide meal periods; (iv) wage statement penalties; (v) waiting time penalties; (vi) unfair competition; and (vii) civil penalties. (*Id.* at 12.)

In orders dated June 7, 2016 and August 31, 2016, the Fresno County Superior Court expressed concerns about the settlement agreement. (*Id.*) The parties thereafter filed a renewed motion for preliminary approval of class action settlement, along with a second amended joint stipulation of class action settlement and release. (*Id.*) On March 7, 2017, the Fresno County Superior Court denied preliminary approval, again expressing concerns about the parties' settlement agreement. (*Id.*)

On April 14, 2017, the parties stipulated to plaintiffs' filing of a fourth amended consolidated complaint, which incorporated an additional claim that defendant had failed to pay wages as required by and in violation of the Federal Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (*Id.*) The Fresno County Superior Court approved the stipulation, and on June 19,

2017, plaintiffs filed the fourth amended complaint. (*Id.*) The operative fourth amended complaint alleges eight causes of action: (i) failure to provide rest breaks; (ii) failure to provide meal periods; (iii) failure to pay overtime wages; (iv) wage statement penalties; (v) waiting time penalties; (vi) violations of California Unfair Competition Law; (vii) civil penalties; and (viii) failure to pay wages in violation of the FLSA. (Doc. No. 9-2 at 344–69.)

On July 10, 2017, defendant removed the action to this federal court, asserting federal question jurisdiction based on the eighth cause of action for failure to page wages in violation of the FLSA. (Doc. No. 1 at ¶ 9.)

Thereafter, on December 14, 2017, plaintiffs filed an unopposed motion to certify class for purposes of settlement and for preliminary approval of the class action settlement. (Doc. No. 9.) At the April 5, 2018 hearing on the motion, the undersigned raised several concerns regarding the proposed settlement. Plaintiffs requested leave to file supplemental briefing to attempt to address the court's concerns, which the court granted. (*See* Doc. No. 11.) After granting plaintiffs multiple extensions of time in which to do so (*see* Doc. Nos. 18, 22, 24, 27, 30), plaintiffs filed their supplemental memorandum in support of their motion to certify class for purposes of settlement and for preliminary approval of class action settlement on August 28, 2018, as well as a Third Amended Settlement. (Doc. No. 31.)

Pursuant to the parties' Third Amended Settlement, plaintiffs seek to represent a class, certified for the purposes of settlement only, comprised of:

> [A]ll current and former non-exempt employees of Bar 20 Dairy, LLC employed between February 11, 2011 through May 11, 2016 in the following departments and/or job categories, or any like position(s): Breeders, Calf, Corral Maintenance, Feed Push, Feeders, Fresh Cow, Hospital, Maintenance, Waste Management, Maternity, Milkers, Farm Tractor and Equipment Drivers, Farm Irrigators, and Farm Shop.

(Doc. No. 31-2 at 67.) Under this proposed settlement agreement, defendant would pay a gross settlement amount of $450,000. (Doc. No. 31-2 at 35.) The agreement provides for the following allocation of that payment: (i) attorneys' fees of not more than one-third, or $150,000, to be paid to class counsel; (ii) estimated litigation expenses of up to $25,000 to be paid to class counsel; (iii) estimated settlement administration costs of up to $6,000 to be paid to the administrator

Simpluris, Inc.; (iv) incentive awards of $7,500 to be paid to plaintiffs Maciel and Bonilla each, for a total of $15,000; (v) penalties of $5,000 under the California Private Attorney General Act of 2004 ("PAGA"), with 75 percent of that amount, or $3,750, to be paid to the Labor and Workforce Development Agency pursuant to California Labor Code § 2699(i); and (vi) the remaining net settlement amount to be distributed to the class members.

The individual settlement amount awarded to each class member under the newly proposed settlement agreement shall be calculated by multiplying the net settlement amount by a fraction, the numerator of which shall be the number of pay periods worked by the class claimant while employed by the defendant during the class period, and the denominator of which shall be the total number of pay periods worked by all class claimants while employed by defendant during the class period. (Doc. No. 31-2 at 51.) In this way, plaintiffs assert, the amount of each class claimant's individual award will be primarily determined by the length of his or her employment with defendant during the class period. (Doc. No. 9-2 at ¶ 80.) The proposed settlement agreement further provides that the individual settlement amount paid to each class claimant shall be no less than $100. (Doc. No. 31-2 at 51.)

Defendant also agrees to pay 60 percent of the net settlement amount, even if less is claimed by class members. (*Id.* at 35.) If the aggregate of the individual settlement amounts claimed by class members, plus the associated taxes and required withholding, amounts to less than 60 percent of the net settlement amount, the defendant will be required to deposit with the claims administrator the aggregate plus any remainder up to 60 percent of the net settlement amount. (*Id.* at 43.) The Legal Aid Society – Employment Law Center ("LAS-ELC") has been designated by the parties as the *cy pres* beneficiary, with the balance of any unclaimed net settlement amount reverting to defendant. (*Id.* at 53.)

Plaintiffs seek an order from this court: (i) certifying the settlement class, with appointment of plaintiffs as class representatives, appointment of attorneys David G. Spivak and Eric B. Kingsley as class counsel for purposes of the settlement, and appointment of Simpluris, Inc. as the settlement administrator; (ii) preliminarily approving the settlement agreement; (iii)

/////

4

approving the proposed form and method of notice to the settlement class; and (iv) scheduling the hearing date for the final approval of the class settlement.

## LEGAL STANDARD

### A.     Rule 23 Settlements

Federal Rule of Civil Procedure 23(e) mandates that, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The following procedures apply to the court's review of the proposed settlement:

> The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> . . .
>
> Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted).  To protect the rights of absent class members, Rule 23(e) requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946.  However, when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946.  Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See* MANUAL FOR COMPLEX LITIGATION (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266–67 (9th Cir. 2010). Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011); *Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have generally adopted [the process of preliminarily certifying a settlement class]."). While it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh, among other factors, the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the extent of discovery completed; and the value of the settlement offer. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

/////

/////

**B.     FLSA Settlements**

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).  Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court.  *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Beidleman v. City of Modesto*, No. 1:16–cv–01100–DAD–SKO, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13, 2018); *Yue Zhou v. Wang's Rest.*, No. 05–cv–0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007).  Employees may bring collective actions under the FLSA, representing all "similarly situated" employees, but "each employee [must] opt-in to the suit by filing a consent to sue with the district court." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000); *see also Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014).

The Ninth Circuit has not established criteria for district courts to consider in determining whether an FLSA settlement should be approved.  *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016).  However, district courts in this circuit have frequently applied a widely-used standard adopted by the Eleventh Circuit, which looks to whether the settlement is a fair and reasonable resolution of a bona fide dispute.  *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); *Yue Zhou*, 2007 WL 2298046, at *1.  "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted).  A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because doing so would shield employers from the full cost of complying with the statute. *Id.*

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent

differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also Almodova v. City & County of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010), *recommendations adopted by* 2010 WL 1644971 (D. Haw. Apr. 20, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply). District courts in this circuit have also taken note of the "unique importance of the substantive labor rights involved" in settling FLSA actions and adopted a "totality of circumstances approach that emphasizes the context of the case." *Selk*, 159 F. Supp. 3d at 1173. With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* Following this approach, the district court's "[o]bligation is not to act as caretaker but as gatekeeper," so that FLSA "settlements do not undermine the Act's purposes." *Goodwin v. Citywide Home Loans, Inc.*, No. SACV 14–866–JLS (JCGx), 2015 WL 12868143, at *2 (C.D. Cal. Nov. 2, 2015) (quoting *Goudie v. Cable Commc'ns, Inc.*, No. CV 08-507-AC, 2009 WL 88336 at *1 (D. Or. Jan. 12, 2009)). Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

As recognized by the Ninth Circuit, some district courts within this circuit have questioned the propriety of allowing an FLSA collective action to proceed in the same case as a

Rule 23 class action. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1093 (9th Cir. 2011) (noting that the question of whether a Rule 23 class action can "co-exist with a related collective action under the FLSA . . . has divided district courts in our circuit"); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 471–73 (E.D. Cal. 2010) (collecting cases). Nevertheless, other district courts have allowed hybrid FLSA/Rule 23 actions to proceed to settlement, particularly where the funds and claims are treated separately. *See, e.g.*, *Thompson v. Costco Wholesale Corp.*, No. 14-cv-2778-CAB-WVG, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) (noting that "courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims"); *Millan v. Cascade Water Servs., Inc.*, No. 1:12-cv-01821-AWI-EPG, 2016 WL 3077710, at *1–2 (E.D. Cal. May 31, 2016); *Moore v. Fitness Int'l, LLC*, No. 3:12–CV–1551–LAB–NLS, 2013 WL 3189080, at *8, n.6 (S.D. Cal. June 21, 2013) (observing that the FLSA does not permit collective claims brought under it to be treated in the same manner as a class under Rule 23).

## ANALYSIS

The Third Amended Settlement now proposed by the parties in this case corrects some of the deficiencies the court identified at the hearing on plaintiff's motion for preliminary approval, including refinement of the class period to February 11, 2011 to May 11, 2016, clarification of the $6,000 settlement administration cap, exclusion of non-party Producers Dairy Foods, Inc. from the definition of "Released Parties," and clarification in the settlement agreement itself that the FLSA claims will only be released for those settlement class members who submit a claim form.[1] (*See* Doc. No. 31.) The court appreciates the efforts of the parties in addressing these issues. Nonetheless, there continue to be outdated references scattered throughout the Third Amended

/////

/////

/////

---

[1] However, as discussed below, plaintiffs' proposed class notice and claim form still do not make clear that the FLSA claims will only be released for those class members who opt in to the FLSA collective action.

9

Settlement, the proposed class notice, and the proposed claim form.[2]  These errors

notwithstanding, upon further review of the procedural history in this case, as well as the structure

and terms of the proposed settlement, the court finds the granting of preliminary approval to be

unwarranted.

The FLSA claim in this case was alleged for the first time in plaintiff's fourth amended

consolidated complaint, filed on June 19, 2017 in the Fresno County Superior Court.  (Doc. No.

9-1 at 12.)  It appears the inclusion of the FLSA claim only arose after the state court denied

preliminary approval of the parties' settlement on March 6, 2017, relying in part on its

observation that the release provision was not limited to the identical factual predicate alleged in

the consolidated complaint because it "unlawfully attempt[ed] to include claims under the Fair

Labor Standards Act."  (Doc. No. 9-2 at 340.)  The court remains troubled by the belated addition

of the FLSA claim to this action, coupled with other structural features of the proposed

settlement.[3]

First, it appears that plaintiffs have discounted the value of their FLSA claim entirely.

Following removal of the action to this federal court, plaintiffs again sought preliminary approval

of the same $450,000 settlement that had been negotiated prior to the inclusion of the FLSA

claim.  Thus, no additional compensation was negotiated in exchange for the parties' settlement

of the FLSA claim.[4]  Moreover, plaintiffs' counsel did not recalculate the maximum possible

---

[2]  For example, there are outdated references to the class period extending from February 11,
2011 to the "date of service of notice of entry of order granting preliminary approval" (*see* Doc.
No. 31-2 at 72); references to administrative expenses "not to exceed $15,000" (*see id.* at 47, 67);
and references to the court as the Fresno County Superior Court (*see id.* at 33, 55).  These
examples are not intended to be an exhaustive list of the erroneous references still reflected in the
Third Amended Settlement.

[3]  The court acknowledges that it did not express all the concerns with respect to the inclusion of
the FLSA claim in the proposed settlement it has set forth in this order at the hearing on the
motion.

[4]  This court has denied preliminary approval of a hybrid FLSA/Rule 23 action under similar
circumstances, while expressing concern in that case that "it appear[ed] plaintiff agreed to settle
the FLSA claim before he ever considered litigating it."  *Gonzalez v. Corecivic of Tenn., LLC*,
No. 1:16-cv-01891-DAD-JLT, 2018 WL 4388425, at *4 (E.D. Cal. Sept. 13, 2018).

recovery in this case given the addition of the FLSA claim: the spreadsheet of calculations submitted in support of the pending motion for approval is dated April 18, 2016, prior to the addition of the FLSA claim in plaintiffs' fourth amended consolidated complaint. (*See* Doc. No. 9-2 at 302–11.) No explanation has been offered to the court justifying the fact that no separate amount is being paid by defendant to settle the FLSA claim.[5]

That the settlement now proposed calls for a release of the FLSA claim in exchange for no consideration does not appear to be a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." 29 U.S.C. § 216(b). Rather, "courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims." *Thompson v. Costco Wholesale Corp.*, No. 14-cv-2778-CAB-WVG, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017); *see also Millan*, 310 F.R.D. at 602 (noting that "creation of separate settlement funds for the FLSA class and the Rule 23 class . . . would better protect absent class members"); *Khanna*, 2014 WL 1379861, at *2 (approving hybrid settlement that allocated two-thirds of net settlement amount to state claims and one-third of net settlement amount to FLSA claims); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 1878918, at *3 (N.D. Cal. May 3, 2013) (same). It would seem that if defendant insists that class members release a bona fide FLSA claim, defendant should pay fair and reasonable consideration for that release. If that is not the case, the parties must provide the court with a more thorough explanation than they have to date.

/////

---

[5] Notably, the instant motion seeks certification of a Rule 23 class action, but does not request certification of an FLSA collective action. The FLSA provides for a private right of action to enforce its provisions "by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The court acknowledges that the requirements for class certification under Rule 23 are more stringent than the FLSA's requirement that those bringing a collective action be "similarly situated." *Harris v. Vector Mktg Corp.*, 753 F. Supp. 2d 996, 1003 (N.D. Cal. Nov. 5, 2010) ("Courts have generally held that the 'similarly situated' standard under the FLSA is not as stringent as the 'common questions predominate' standard under Federal Rule of Civil Procedure 23(b)(3)."). Nonetheless, the failure of plaintiffs' motion to even mention, let alone address in a substantive fashion, the standard for certifying an FLSA collective action reinforces this court's perception that the settlement of the FLSA claim by plaintiffs here was merely an afterthought.

In this regard, were plaintiffs to now contend that their FLSA claims are valueless, and therefore do not require a renegotiation of the settlement, the court would find such a justification problematic.  If plaintiffs believed such claims so lacked merit and worth, plaintiffs could not possibly represent the best interests of any class members who might be eligible to participate in a FLSA settlement.  Moreover, amending a complaint to add a claim that plaintiffs believe is meritless or valueless may well violate Rule 11.  *See* Fed. R. Civ. P. 11(b)(2) (noting legal contentions must be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law").  In any event, as things now stand, the court cannot approve any FLSA settlement here because there would appear to be no bona fide dispute about FLSA liability:  instead, by assigning no value to the FLSA claim, plaintiffs appear to effectively concede that defendant is not liable under the FLSA.  Without a bona fide dispute about FLSA liability, the court cannot approve a settlement of those claims. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1352–53; *Selk*, 159 F. Supp. 3d at 1172; *Nen Thio*, 14 F. Supp. 3d at 1333; *Yue Zhou*, 2007 WL 2298046, at *1; *see also Thompson*, 2017 WL 697895, at *8 ("[I]f there is no bona fide dispute over FLSA provisions . . . Plaintiff should dismiss the FLSA claim from the complaint without prejudice, and the parties can limit their settlement to the Rule 23 class action claims.").

Second, the proposed notice to the class is deficient.  Although the Third Amended Settlement clarifies that FLSA claims will only be released for those class members who submit a claim form (*see* Doc. No. 31-2 at 36–37), the class notice makes no such distinction.  Rather, it simply states:  "If you do not file a Claim Form (Option 1), object to the Settlement (Option 2), or exclude yourself from the settlement (Option 3), then by default you will remain a Settlement Class Member and be bound by the Court's judgment in this case; however, you will not receive any money from this settlement because you did not file a timely and valid Claim Form."  (*Id.* at 70.)  The proposed class notice further provides:  "The release of claims, set forth on the attached Claim Form, describes exactly the legal claims that you will give up."  (*Id.* at 68.)  However, and to the contrary, the proposed claim form does not provide any information regarding the precise claims being released.  (*See id.* at 72–73.)

Federal wage claims under FLSA must be brought as a collective action, and are limited in participation to only those parties that opt in to the suit. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). In contrast, a class action brought under Rule 23 binds all members of the certified class unless they *opt out* of the suit. *See* Fed. R. Civ. P. 23(c)(2)(B)(v) (providing "that the court will exclude from the class any member who requests exclusion"); *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) ("In a class action, once the district court certifies a class under Rule 23, all class members are bound by the judgment unless the opt *out* of the suit."). Consequently, courts considering settlements in hybrid FLSA/Rule 23 actions "consistently require class notice forms to explain: (1) the hybrid nature of the action; and (2) the claims involved in the action; (3) the options that are available to California Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collective action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing." *Thompson*, 2017 WL 697895, at *8 (quoting *Pierce*, 2013 WL 1878918 at *4) (internal quotation marks and brackets omitted); *see also Sharobiem v. CVS Pharmacy, Inc.*, No. CV 13-9426-GHK (FFMx), 2015 WL 10791914, at *4 (C.D. Cal. Sept. 2, 2015) ("[T]he Claim Form does not make clear the difference between a Rule 23 class action and an FLSA collective action and, as a result, is not clear and easy to follow.").

Plaintiffs' proposed class notice and claim form make no reference whatsoever to the hybrid nature of this proposed settlement. Nor does the proposed class notice make clear the consequences of opting in, opting out, or taking no action at all. Plaintiffs' proposed class notice is thus highly misleading and weighs heavily against the court granting preliminary approval.

Third, plaintiffs have structured the Rule 23 class action to require class members to opt in and submit a claim form if they wish to benefit from the settlement. (*See* Doc. No. 31-2 at 68.) However, as noted above, a class action brought under Rule 23 binds all members of the certified class unless they opt out. *See McElmurry*, 495 F.3d at 1139. As a preliminary matter, requiring

13

Rule 23 class members to opt in to a settlement appears, at least arguably, contrary to law. *See* Fed. R. Civ. P. 23(c)(2)(B)(v) ("the court will exclude from the class any member who requests exclusion"); *see also Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 217 (5th Cir. 2012) ("Simply put, there is no authority for establishing 'opt-in' classes in which the class members must take action to be included in the class.") (citation and internal quotation marks omitted); *Estate of Kern v. Siemens Corp.*, 393 F.3d 120, 124 (2d Cir. 2004) ("Not only is an 'opt in' provision not required, but substantial legal authority supports the view that by adding the 'opt out' requirement to Rule 23 in the 1966 amendments, Congress *prohibited* 'opt in' provisions by implication."); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir. 1974) ("The requirement of an affirmative request for inclusion in the class is contrary to the express language of Rule 23(c)(2)(b)."). Plaintiffs have provided no explanation for why the administration of the Rule 23 claims cannot proceed under the typically recognized opt out procedure, separate and apart from the administration of an opt in procedure with respect to the FLSA claim.

Notwithstanding the lack of authority to require class members to opt in to a Rule 23 class action, plaintiffs' arguments in favor of the opt in procedure are wholly unpersuasive. Plaintiffs aver that requiring class members to opt in to the Rule 23 action is warranted here on two grounds: first, because workers in the dairy and agriculture industry change their residence often, and requiring a class member to submit a claim form would confirm the identity of the class member and the class member's address; and second, because the simultaneous FLSA collective action requires an opt-in procedure. (Doc. No. 9-2 at ¶¶ 87, 88.) However, it appears that defendant already maintains all the information necessary to process claims to the Rule 23 class members. The Third Amended Settlement provides that, in order to provide notice to the class, defendant shall submit to the settlement administrator and class counsel a list of class members reflecting names, social security numbers, dates of employment, number of pay periods worked, and last-known addresses and phone numbers (the "Database"). (Doc. No. 31-2 at 47–48.) Should any class notice mailed to a class member be returned as undeliverable, the settlement administrator will perform a skip trace search to seek an address correction for that class member. (*Id.* at 48.) Plaintiffs have provided no explanation why this process cannot be used to pay

settlements directly to the class members who do not opt out of the Rule 23 class action, while requiring that a claim form only be submitted for those class members who wish to opt in to the FLSA collective action. *See, e.g.*, *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) ("[A]lthough the Court recognizes the potential for confusion inherent in sending a notice requiring Plaintiffs to opt out of the state class after receiving two notices asking if they wished to opt in the FLSA class, this risk of confusion can be minimized, if not eliminated, with effective notice that clearly details the difference between the two claims and the opt-out procedure that must be followed with regard to a Rule 23 class action."); *McCormick v. Festiva Dev. Grp., LLC*, No. 09-365-P-S, 2010 WL 582219, at *8 (D. Me. Feb. 11, 2010) ("While the maintenance of side-by-side opt-in and opt-out mechanisms may pose case management difficulties, it does not undermine Congress' purpose in limiting *FLSA collective actions* to opt-in participants only."); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F. Supp. 2d 1026, 1033 (E.D. Wis. 2008) ("If the required showing for class certification is made, care will be required to draft a notice that properly explains the obligation members of the class have to opt out of the class if they wish to be excluded, as opposed to the obligation to opt in if they are to be included on the collective FLSA claim.").

Indeed, the Third Amended Settlement does not permit a class member to choose whether to opt in to the Rule 23 class only or the FLSA collective action only; as written, a class member who seeks to participate in the settlement must opt in to both. The failure of the settlement to consider the possibility that a putative class member may want to participate in one but not the other counsels against the court's granting of preliminary approval. *See Millan*, 310 F.R.D. at 602 ("This Court's concern is that [the] settlement agreement does not permit putative class members to elect to (a) opt in to the FLSA class but opt out of the Rule 23 class or (b) submit a Rule 23 claim and not opt in to the FLSA class. That deficit should be remedied prior to any motion for certification.").

The court is especially wary of plaintiffs' proposed opt-in Rule 23 process where, as here, defendant has only guaranteed that it will pay up to 60 percent of the gross settlement amount, even if less is claimed by the class, with the remainder to revert to defendant. (Doc. No. 31-2 at

35, 43, 53.)  Requiring the Rule 23 class members to submit a claim form minimizes the likely

settlement payments.  *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 391 (C.D. Cal. 2007)

("In reality, the bulk of the economic relief hypothetically available under the Settlement is

merely illusory due to its strict eligibility conditions, while much of what is attainable will go

unpaid as a result of the claims-made process."); *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34,

52 (D. Me. 2005) ("'Claims made' settlements regularly yield response rates of 10 percent or

less.").  Here, because defendant already maintains the Database of last-known addresses of the

class members, the claims process for the Rule 23 class appears to serve little purpose other than

to minimize defendant's ultimate payout under the proposed settlement.

Fourth, and related to the above, the parties continue to insist on the inclusion of a

reversionary clause, without adequate justification.  The Ninth Circuit has counseled that "courts

must be particularly vigilant not only for explicit collusion, but also for more subtle signs that

class counsel have allowed pursuit of their own self-interests and that of certain class members to

infect the negotiations."  *In re Bluetooth*, 654 F.3d at 947.  Among those "subtle signs" include

when the parties arrange for funds not awarded to revert back to defendant.  *Id.*

At the April 5, 2018 hearing on the pending motion, the court raised concerns regarding

the reversionary clause.  Plaintiffs' supplemental memorandum in support of preliminary

approval defends the reversionary clause, representing that defendant "remains unwilling to

eliminate the reversion provision unless Plaintiffs agree to lower the Maximum Settlement

Amount, thereby reducing the size of all class members['] shares." (Doc. No. 31 at 6.)  In

essence, plaintiffs admit that the reverter remains in the settlement because defendant hopes to

ultimately pay less than the maximum settlement amount.  This would not appear to be fair or

reasonable.  The settlement amount is the amount that defendant voluntarily decided to pay in

order to settle this lawsuit, and "[t]here is no reason not to require Defendant to actually pay this

sum of money."  *La Parne v. Monex Deposit Co.*, No. SACV 08-0302 DOC (MLGx), 2010 WL

4916606, at *4 (C.D. Cal. Nov. 29, 2010).

The court does not suggest that a reversion to defendant could *never* be justifiable.  *Cf.*

*Trout v. Meggitt-USA Servs., Inc.*, No. 2:16-cv-07520-ODW (AJW), 2018 WL 1870388, at *6

(C.D. Cal. Apr. 17, 2018) (finding reversion provision in FLSA collective action settlement appropriate, relying in part on the fact that the settlement would pay each employee for the full amount of overtime worked plus an equal amount in liquidated damages); *Dudum v. Carter's Retail, Inc.*, No. 14-cv-00988-HSG, 2016 WL 7033750, at *5 (N.D. Cal. Dec. 2, 2016) ("Because the reversion only applies to the penalty-proxy amount, and the Class Members who do not opt out are guaranteed more than the maximum wages they were underpaid, the Court finds that the reversionary provision does not render the Settlement Agreement inherently inadequate."); *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV 11-1802 PSG (PLAx), 2015 WL 9664959, at *7 (C.D. Cal. Aug. 4, 2015) (granting final approval to class action settlement with reversion clause because "Plaintiffs would likely not have been able to negotiate a maximum amount of even $12 million without this clause and have taken methods to increase participation in the Settlement Agreement. For example, Plaintiffs caused Notice Packets to be mailed to over 145,000 putative class members and then reminder post cards a month later to those putative class members who had not responded."). However, the parties have failed to provide sufficient justification for such a provision in this case.

Plaintiffs do not argue that the results of this settlement fully compensate each employee or constitute otherwise extraordinary results for the class despite the reversion, nor do they argue that they have taken steps to maximize participation in the settlement. Rather, plaintiffs attempt to justify the reversion by arguing that such a provision is "supported by federal and California caselaw." (Doc. No. 31 at 11.) Yet the cases cited by plaintiff in support of this contention are largely inapposite,[6] while some of the cited cases in fact stand for the opposite conclusion. Plaintiffs cite a California state court decision, *Cundiff v. Verizon California, Inc.*, 167 Cal. App. 4th 718, 728 (2008), for the proposition that reversion to the defendant may be appropriate "where deterrence is not a factor." (Doc. No. 31 at 12.) It is true that the Ninth Circuit has found that reversion may be appropriate "when deterrence is not a goal of the statute." *Six (6) Mexican*

---

[6] Plaintiffs cite *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) and *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997), neither of which addressed the propriety of reversionary provisions but instead held that attorneys' fees should be awarded based on the gross settlement fund amount, rather than the amount of funds claimed. (*See* Doc. No. 31 at 12.)

*Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990) (concluding that "[i]n light of the deterrence objective of [Farm Labor Contractor Registration Act] and the nature of the violations, we find that reversion of the funds to the defendants is not an available option"). Yet Congress specifically intended the FLSA, the statute on which one of plaintiffs' causes of actions is based, to have a deterrent effect. *See Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697, 710 (1945) (citing the FLSA's deterrent effect as grounds for invalidating a release of FLSA liability signed by an employee). Applying this reasoning, district courts in this circuit have repeatedly found that reversion to the defendant is not appropriate in FLSA collective action settlements. *See, e.g.*, *Millan*, 310 F.R.D. at 612 ("Other courts in this District have noted, and this Court agrees, that where 'a statute's objectives include deterrence, as does the FLSA's, it would contradict these goals to permit the defendant to retain unclaimed funds.'") (quoting *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM, GGH, 2012 WL 4465558, at *11 (E.D. Cal. Sept. 25, 2012)); *La Parne*, 2010 WL 4916606, at *4 ("Congress intended the FLSA to have a deterrent effect. Requiring Defendant to pay the full amount of the settlement fund serves this deterrent goal.") (internal citation omitted). As discussed above, the value of the FLSA claim in this case remains unclear, as does any amount in the proposed settlement attributable to that claim. However, plaintiffs have certainly provided no reason to depart from the holdings of these cases here where the FLSA claim is part of the proposed settlement.

The court will not forestall further efforts by the parties to settle this matter. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *Custom Led, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2013 WL 4552789, at *9 (N.D. Cal. Aug. 27, 2013) (denying preliminary approval without prejudice). However, this settlement cannot be approved without significant amendment.

/////

/////

/////

/////

**CONCLUSION**

For the reasons given above, the plaintiffs' motion for preliminary settlement approval (Doc. No. 9) is denied without prejudice. The matter is referred to the assigned magistrate judge for further scheduling consistent with this order.

IT IS SO ORDERED.

Dated: __**October 22, 2018**__

_____
UNITED STATES DISTRICT JUDGE