UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE MACIEL and ELVIS BONILLA,
on behalf of themselves and all others
similarly situated, and as "aggrieved
employees" on behalf of other "aggrieved
employees" under the Private Attorneys
General Act of 2004,

           Plaintiffs,

     v.

BAR 20 DAIRY, LLC, a California limited
liability company; and DOES 1 through 50,
inclusive,

           Defendants.

No. 1:17-cv-00902-DAD-SKO

ORDER GRANTING MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT AND ATTORNEY
FEES, COSTS, AND INCENTIVE AWARD

(Doc. No. 68)

      This matter came before the court on April 12, 2021, for hearing on plaintiff's unopposed motion for final approval of a class action settlement and for an award of attorneys' fees, costs, and an incentive award, filed on behalf of plaintiffs Jose Maciel and Elvis Bonilla and the class. (Doc. No. 68.) Attorneys Eric Kingsley and Caroline Tahmassian appeared telephonically on behalf of plaintiffs and the class. Attorney Jared Hague appeared telephonically on behalf of the defendant. For the reasons set forth below, the court will grant final approval of the class action settlement and will award attorneys' fees, costs, and an incentive award to plaintiffs Maciel and Bonilla.

**BACKGROUND**

The court previously granted preliminary approval of the settlement in this action on October 14, 2020. (Doc. No. 63.) On March 15, 2021, plaintiffs filed the pending unopposed motion for attorneys' fees and for final approval of the class and collective action settlement. (Doc. No. 68.) As of the date of the hearing on April 12, 2021, no objections to the settlement have been received or filed with the court, and only one class member has requested exclusion from the settlement. (Doc. No. 68-19 at ¶ 9.)

**FINAL CERTIFICATION OF SETTLEMENT CLASS AND COLLECTIVE**

The court conducted an examination of the class action factors in the orders granting preliminary approval of the settlement and found certification warranted. (Doc. Nos. 60 at 12–16; 63 at 3.) Because no additional issues concerning certification have been raised, the court does not repeat its prior analysis here, and finds that final class and collective action certification in this case is appropriate.

**A.     The Rule 23 Class**

The following class (the "Class") of an estimated 315 individuals (the "Class Members") is therefore certified for settlement purposes:

> [A]ll current and former non-exempt employees of Defendant during the period of February 11, 2011 through May 11, 2016 ("Class Period") in the following departments and/or job categories: Breeders, Calf, Corral Maintenance, Feed Push, Feeders, Fresh Cow, Hospital, Maintenance, Waste Management, Maternity, Milkers, Farm Tractor and Equipment Drivers, Farm Irrigators, and Farm Shop.

(Doc. Nos. 54-1 at 17–18; 54-2, Ex. 1, Settlement Agreement at 55–56; 68-2 at 5.) In addition, and for the reasons stated in the order granting preliminary approval (Doc. No. 60 at 15–16, 32), plaintiffs Maciel and Bonilla are confirmed as class representatives, attorneys David G. Spivak of The Spivak Law Firm and Eric B. Kingsley of Kingsley & Kingsley, APC are confirmed as class counsel, and Simpluris, Inc. ("Simpluris") is confirmed as the settlement administrator.

**B.     The FLSA Collective**

The FLSA collective shares the same definition as the Rule 23 Class such that Class Members can release their FLSA Claims by opting into the FLSA Settlement. (Doc. No. 54-1 at

13.)  A Class Member can opt-in by endorsing and cashing their FLSA Settlement Check.  (*Id.*)

Only Class Members who cash their FLSA Settlement Checks will release their FLSA Claims.

(Settlement Agreement at 78; Doc. No. 54-2, Ex. 1, Class Notice at 90.)  The FLSA collective

(the "FLSA Collective") is also certified for settlement purposes.

## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class actions require the approval of the district court prior to settlement.  Fed. R. Civ.

P. 23(e).  Federal Rule 23 requires the district court to determine whether a proposed settlement is

fundamentally fair, adequate, and reasonable.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

(9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338

(2011) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  The

settlement as a whole, rather than the individual component parts, is examined for overall

fairness.  *Hanlon,* 150 F.3d at 1026.

To approve a settlement, a district court must:  (i) ensure notice is sent to all class

members; (ii) hold a hearing and make a finding that the settlement is fair, reasonable, and

adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement;

and (iv) class members be given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)–(5).  The fifth

amended settlement agreement in this action was previously filed on the court's docket (*see* Doc.

No. 61, Ex. 1), and class members have been given an opportunity to object thereto but have not

done so as noted above.  The court now turns to the adequacy of notice and its review of the

settlement following the final fairness hearing.

**A.** **Notice**

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)."

*Hanlon*, 150 F.3d at 1025; *see also Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994)

(noting that the court need not ensure all class members receive actual notice, only that "best

practicable notice" is given); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL

107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made

to reach all class members, it does not require that each individual actually receive notice.").

"Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to

alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025. It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement because it serves as "adequate notice of class counsel's interest in the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)) (noting that where the notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

The court previously reviewed the class notice that was proposed when the parties sought preliminary approval of the settlement and found the notice to be satisfactory. (Doc. No. 63 at 6–7.) Following the grant of preliminary approval, the settlement administrator Simpluris conducted a National Change of Address search to update the list of putative class members with current addresses and then mailed the court-approved notice to the 315 putative class and FLSA collective members. (Doc. No. 68-19 at ¶¶ 6,7.) Of the 315 initial mailings, 60 were returned as undeliverable. (*Id.* at ¶ 8.) The administrator searched for updated addresses using Accurint, a research tool owned by LexisNexis, for those individuals whose mailings were returned as undeliverable. (*Id.*) The administrator received updated addresses for 44 putative class members, who were then re-mailed the notices at the forwarding addresses provided by the U.S. Postal Service, addresses found via Accurint, or forwarding addresses provided by the class. (*Id.*) Only 16 notices now remain undeliverable because the administrator was unable to find a deliverable address. [1] (Doc. Nos. 72 at ¶ 8; 72-1 at ¶ 3.) Thus, of the 315 total class members, 299 putative

---

[1] Plaintiffs' declaration filed with the motion indicated that as of March 2021, 169 packets were undeliverable due to the lack of deliverable addresses. (*Id.*) At the April 12, 2021 hearing on the pending motion, the court stated its concern that only 46.3% of the 315 total class members appeared to have received actual notice of the settlement. On April 19, 2021, plaintiffs filed a supplemental declaration clarifying that their motion contained a typographical error and that, in fact, only 16 notices were deemed undeliverable, not 169. (Doc. Nos. 72 at ¶ 8; 72-1 at ¶ 3.)

class members, or 94.4%, are estimated to have received actual notice of the settlement. (*Id.*)

Given the above, the court concludes that adequate notice was provided to the class here. *See Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (courts need not ensure all class members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). The court accepts the reports of the settlement administrator and finds that sufficient notice has been provided satisfying Rule 23(e)(1).

**B. Final Fairness Hearing**

On April 12, 2021, the court held a final fairness hearing, at which class counsel and defense counsel appeared telephonically. No class members, objectors, or counsel representing the same appeared at that hearing. For the reasons explained below, the court now determines that the settlement reached in this case is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).

At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1026. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)); *see also Lane*, 696 F.3d at 818–19. Having already completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits. *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Vill., L.L.C.,* 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625. Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and proof." *Staton*, 327 F.3d at 953 (quoting *Hanlon*, 150 F.3d at 1026).

/////

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7.

    1.    Strength of Plaintiffs' Case

When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The court cannot reach such a conclusion because evidence has not been fully presented. *Id.* Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

Here, the parties recognize that there are risks associated with each of plaintiffs' main claims that: (1) defendant failed to pay workers overtime wages; (2) defendant failed to compensate workers for meal and rest periods; (3) class members are entitled to waiting time penalties as a result of defendant's failure to compensate for meal and rest periods and failure to pay overtime wages; and (4) class members are entitled to PAGA penalties as a result of defendant's failure to compensate for meal and rest periods and failure to pay overtime wages. (Doc. No. 68-1 at 23–27.)

Despite plaintiffs' confidence in their claim for overtime wages, plaintiffs assert that continuing to litigation would have faced many challenges. (*Id.* at 23.) Defendant maintains that "the alleged failure to pay overtime wages was related to the issuance of discretionary bonuses," which, if so, "would not increase the regular rate of pay for purposes of overtime wages." (*Id.* at

23–24.) Defendant also provided evidence that "its employees did not often work shifts in excess of ten hours (only 20% of the workdays) and, consequently, earned no overtime wages because Wage Order 14 only requires overtime wages for work in excess of ten hours per day (only 4,833 out of a total of 22,483 shifts were over 10 hours)." (*Id.* at 24.) Defendant contends that even for those days where class members worked in excess of ten hours, they were compensated wages "in the form of 'Extra Days,' 'Misc Pay,' and 'Incentive' pay, compensation that exceeded the amount they earned in overtime wages for the worktime in excess of ten hours." (*Id.*)

As to plaintiffs' meal and rest period claim, plaintiffs contend that defendant "had an informal policy of not following its written meal and rest period policies and that they encouraged or instructed their employees to forgo their breaks or take them late." (*Id.*) However, defendant's written meal and rest period policies are consistent with California law such that this court previously struck the claim from this action, and plaintiffs acknowledge the difficulty of pursuing that claim on appeal. (*Id.*)

As to plaintiffs' claim for waiting time penalties, defendant contends that plaintiffs cannot establish that defendant willfully failed to pay the wages of class members, and plaintiffs recognize the difficulty of doing so because defendant (1) is "a relatively unsophisticated agricultural employer" who had not previously been sued or cited for Labor Code violations and (2) did not have guidance from the California Supreme Court about "what it means to provide meal and rest periods" until 2012. (*Id.* at 25) (citing *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1032 (2012)). In addition, the parties recognize a substantial risk that plaintiffs' waiting time penalties claim may be limited to their underlying claim for unpaid minimum wages, and not their unpaid rest period claim, because the California Court of Appeal relatively recently held that derivative waiting time penalties may not be available where employers fail to provide rest periods. (*Id.* at 25–26) (citing *Naranjo, et al. v. Spectrum Sec. Servs., Inc.* 40 Cal. App. 5th 444 (2019)).

Plaintiffs also assert that "there is significant risk attendant" to plaintiffs' claim for PAGA penalties associated with defendants' alleged Labor Code violations. (*Id.* at 26.) In particular, plaintiffs note that the court has discretion to "award any lesser amount than the maximum civil

penalty" and that "there is limited case law interpreting PAGA and the range of penalties which may permissibly be awarded under PAGA's provisions." (*Id.*) (citing *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018)). According to plaintiffs, this uncertainty could "lead to protracted litigation, both at the trial and appellate levels" and present challenges to their ability to prevail on the claims.

Additionally, regarding plaintiffs' FLSA claim for unpaid wages, plaintiffs note that "[i]t is most likely that at trial, a court will not award an additional amount for Plaintiffs' FLSA claim because Plaintiffs' FLSA claim, although a separate cause of action, was for the same alleged unpaid wages that were the basis of Plaintiffs' Rule 23 claims under the California Labor Code." (*Id.* at 27.) Plaintiffs also note that any potential recovery under FLSA would be lower than the recovery under the Labor Code due to the federal minimum wage being lower than the state minimum wage. (*Id.*)

Therefore, it appears that while plaintiffs may have meritorious claims on a class-wide basis, it is far from certain that they would have prevailed on those claims or achieved full recovery on each or any of them, particularly in light of the substantial appellate risks. The court finds that consideration of this factor weighs in favor of granting final approval of the settlement in this action.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d at 1101 (citing *Class Plaintiffs*, 955 F.2d at 1276). As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Johnson v. Shaffer*, No. 2:12-cv-1059-KJM-AC, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)). Employment law class actions are, by their nature, time-consuming and expensive to litigate. *Hightower v. JPMorgan Chase Bank, N.A.*, No. 11-cv-1802-PSG-PLA, 2015 WL 9664959, at *6 (C.D. Cal. Aug. 4, 2015).

Though the parties have been litigating this case for nearly five years, that timeline would be extended even further by litigating this case to a final resolution through jury trial. The

parties' expenses would increase as litigation costs continue to accrue, and any recovery of a monetary judgment, which is not guaranteed, would be prolonged. Plaintiffs argues that "the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many months or years." (Doc. Nos. 68-1 at 18–19; 68-2 at ¶ 34.) As this case has not yet proceeded to the class certification stage, substantial expense would likely be incurred in litigating a class certification motion, propounding and responding to merits-phase discovery, disputing any dispositive motions, and ultimately trying the case. Plaintiffs also raised the consideration that "decertification is always a possibility." (Doc. Nos. 68-1 at 28; 68-2 at ¶ 37.) It is not only possible but likely that litigating this case further to a final resolution would have required significant investments of both time and expenses, absent a settlement.

Thus, consideration of this factor also weighs in favor of granting final approval of the settlement.

### 3. Amount Offered in Settlement

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

Here, the parties have agreed to a non-reversionary settlement of $450,000 (the "gross settlement amount"). (Doc. No. 68-1 at 16.) The settlement agreement provides for allocation of the gross settlement fund as follows: (1) payment for attorneys' fees in the amount of $150,000, which is one-third of the gross settlement fund; (2) class counsel's litigation expenses in the amount of $21,859.44; (3) payment made to the Labor and Workforce Development Agency ("LWDA") pursuant to the Private Attorneys General Act of 2004 ("PAGA") in the amount of

9

$3,750 and payment to the net settlement amount of $1,250; (4) settlement administration costs estimated to be $10,890; (5) incentive awards of $15,000 to plaintiffs ($7,500 each); and (6) distribution to the class members in the amount of the remaining funds, estimated to be $248,500.56 (the "net settlement amount"). (*Id.* at 16–17.) None of the settlement will revert to defendant and entirety of the net settlement amount will be distributed to class members who do not opt out of the settlement, as checks that are not cashed before their expiration will be distributed to class members who have already cashed their own checks in the form of a second individual settlement amount check. (*Id.* at 16, 21–23.) The net settlement amount will be distributed to class members on a *pro rata* basis, determined by dividing each individual's number of pay periods worked in the defendant's employment at any time during the Class Period out of the number of pay periods worked by all class members. (*Id.* at 20.) The settlement administrator estimates that the average payment per class member is $781.40, with the lowest payment estimated at $100.10 and the highest payment estimated at $2,134.93. (Doc. No. 68-19 at ¶ 11.)

Plaintiffs estimate that the maximum potential damages for unpaid wages in this case are approximately $3,400,000.00, that the maximum statutory penalties are under $800,000.00, and that the maximum discretionary civil penalties are approximately $4,200,000.00, for a total maximum possible recovery of $8,400,000.00. (Doc. No. 68-1 at 29.) Given that the parties very much disagree on whether plaintiffs and the class would be entitled to recovery on any of the claims, as explained above, class counsel contend that the gross settlement amount of $450,000 was fair and reasonable under the circumstances of this case. (*Id.*)

As the court observed in its order granting preliminary approval, the estimated net settlement fund of $248,500.56 represents approximately 3 percent of the theoretical maximum possible recovery of $8,400,000.00. (Doc. Nos. 63 at 5; 60 at 22.) However, this approximated value does not account for any discounts to the statutory or discretionary penalties or give any weight to the defenses presented by the defendants. (*See* Doc. No. 68-1 at 23–26.) In addition, the recovery is allocated such that employees will receive payouts that scale directly with their number of worked pay periods. (Doc. No. 68-1 at 20.) The court has previously assessed the

fairness and adequacy of the settlement amount, in light of the circumstances of this case, and found that while a five percent recovery rate is at the low end of the range of percentage recoveries to be found reasonable (Doc. No. 60 at 22), the court does not find the slight deviation in the new net settlement amount from that which the court preliminarily approved to be significant. (Doc. No. 63 at 5.) Consistent with the reasons stated in the court's prior order granting preliminary approval, the court finds that the settlement amount in this case is appropriate and fair. Thus, consideration of this factor also weighs in favor of final approval.

### 4. PAGA Penalties

The settlement also provides for $5,000.00 in civil PAGA penalties. (Doc. No. 68-1 at 16–17.) Pursuant to PAGA, 75% of the civil penalties, or $3,750.00, will go to the LWDA, and 25%, or $1,250, will be included in the Net Settlement Amount. (*Id.* at 17.) *See* Cal. Lab. Code § 2699(i). Consistent with the reasons stated in the court's prior order granting preliminary approval, the court finds that the amount of PAGA penalties under the settlement in this case is fair, reasonable, and adequate in light of PAGA's public policy goals. (Doc. Nos. 63 at 5; 60 at 24–25.)

### 5. Extent of Discovery Completed and Stage of the Proceedings

"In the context of class action settlement, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)). Approval of a class action settlement thus "is proper as long as discovery allowed the parties to form a clear view of the strength and weaknesses of their case." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). The court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

Here, the parties engaged in significant investigation and substantial informal and formal discovery, including the analysis of defendant's wage and hour policies, interviews of class members, reviews of substantial time and payroll records produced by defendant, and thousands of pages of documents produced. (Doc. No. 68-1 at 30–31.) Based on that discovery, the parties engaged in a private mediation on November 9, 2015 with experienced mediator the Honorable Howard R. Broadman (Ret.), which led to the settlement agreement now pending before the court for final approval. (Doc. No. 60 at 20.) Further, plaintiffs hired an expert to produce an analysis for the "frequency of shift lengths and presumptive meal period violations," which plaintiffs used to calculate the damages estimate. (*Id.* at 21.) As detailed in the court's order granting preliminary approval, the court is satisfied that the parties' negotiations constituted genuine and informed arm's length bargaining. (*Id.* at 20)

Accordingly, the court concludes that consideration of this factor also weighs in favor of granting final approval.

6.      Experience and Views of Counsel

Class counsel have filed declarations in support of plaintiffs' pending motion for final approval, detailing their extensive experience in litigating class actions, and explaining why this settlement is fair and reasonable in their view. (Doc. Nos. 68-2, 68-9.) Based on their experience and qualifications, class counsel have concluded that this settlement is fair and reasonable. Thus, consideration of class counsel's experience and expressed opinions in this regard also weighs in favor of final approval of the settlement.

7.      Presence of a Governmental Participant

The settlement agreement contemplates payment of $3,750 of the settlement amount to the California Labor & Workforce Development Agency under PAGA. (Doc. No. 68-1 at 17.) This too weighs in favor of approval of the settlement. *See Adoma v. Univ. of Phx. Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 13-cv-2679-CAB-BGS, 2014 WL 9872803, at *10 (S.D. Cal. Dec. 23, 2014) (factoring civil PAGA penalties as being in favor of settlement approval).

/////

12

1    8.    Reaction of the Class Members

2         The absence of objections to a proposed class action settlement supports the conclusion

3    that the settlement is fair, reasonable, and adequate.  *See Nat'l Rural Telecomms. Coop.*, 221

4    F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further

5    support for final approval of the Proposed Settlement.") (citing cases); *Barcia v. Contain-A-Way,*

6    *Inc.*, No. 07-cv-938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).

7         According to the declaration of Jeremiah Kincannon, case manager at Simpluris, Inc., who

8    serves as the settlement administrator in this case, no member of the class has filed an objection

9    to the settlement pending before the court for final approval and only one member of the class has

10   requested to be excluded from the settlement.  (Doc. No. 68-19 at ¶¶ 9, 10.)  Similarly, no class

11   members appeared at the final fairness hearing to raise any objections to the settlement.

12   Accordingly, consideration of this factor weighs significantly in favor of granting final approval.

13        In sum, after considering all of the relevant factors, the court finds on balance that the

14   settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).

15        **FINAL APPROVAL OF FLSA COLLECTIVE SETTLEMENT**

16        This action also contains claims brought under the FLSA.  Settlement of claims under the

17   FLSA also requires court approval.  *See Jones v. Agilysys, Inc.*, No. 12-cv-03516 SBA, 2014 WL

18   108420, at *2 (N.D. Cal. Jan. 10, 2014); *Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728,

19   740 (1981); *Yue Zhou v. Wang's Rest.*, No. 05-cv-0279-PVT, 2007 WL 2298046, at *1, n.1 (N.D.

20   Cal. Aug. 8, 2007).  "The FLSA establishes federal minimum-wage, maximum-hour, and

21   overtime guarantees that cannot be modified by contract."  *Genesis Healthcare Corp. v. Symczyk*,

22   569 U.S. 66, 69 (2013).

23        As detailed in the preliminary order, the Ninth Circuit has not yet established consistent

24   criteria for district courts to evaluate whether an FLSA settlement should be approved.  *See Dunn*

25   *v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-cv-05456-HSG, 2016 WL 153266, at *3 (N.D.

26   Cal. Jan. 13, 2016).  In this circuit, district courts look into whether the settlement is a fair and

27   reasonable resolution of a bona fide dispute.  *Id.*; *see also Lynn's Food Stores, Inc. v. United*

28   *States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F.

Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Yue Zhou*, 2007 WL 2298046, at *1. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiff to the compensation they seek, because it would shield employers from the full cost of complying with the statute. *Id.*

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. 09-cv-2214-KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). Having found this settlement to be fair and reasonable under Rule 23, the court therefore looks only to whether there is a bona fide dispute about the existence and extent of defendant's FLSA liability.

As discussed above and in the court's previous order, the parties dispute the facts and law related to each of plaintiffs' claims, including (1) whether "the alleged failure to pay overtime was related to the issuance of discretionary bonuses," which, if so, would "not increase the regular rate of pay for purposes of overtime wages"; (2) whether employees "often work[ed] shifts in excess of ten hours," since "Wage Order 14 only requires overtime wages for work in excess of ten hours per day"; and (3) whether defendant paid plaintiffs and Class Members for any overtime wages they had earned in the form of "'Extra Days,' 'Misc Pay,' and 'Incentive' pay." (Doc. Nos. 60 at 20; 63 at 3; 68-1 at 23–27.) Accordingly, the court concludes there was a bona fide dispute as to FLSA liability and will approve the FLSA settlement.

## ATTORNEYS' FEES, EXPENSES, AND INCENTIVE PAYMENTS

In plaintiffs' motion for final approval of the class action settlement, plaintiffs also request awards for class counsel's fees, litigation expenses, and incentive payments for plaintiffs. (Doc. No. 68.)

/////

/////

14

**A.    Attorneys' Fees**

This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. 14-cv-08822-SJO-EX, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). The Ninth Circuit has generally set a 25 percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").

Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55. Ultimately,

however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Here, the settlement provides that class counsel will seek an award of 33.33 percent of the Gross Settlement Amount, equivalent to $150,000. (Doc. No. 68 at 9–10.) The court approved plaintiffs' request for attorneys' fees on a preliminary basis, finding that the requested fee amount of $150,000 was reasonable even though it was somewhat higher than the 25% benchmark rate in the Ninth Circuit, but not uncommon for wage-and-hour class actions in the Eastern District of California. *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (listing cases where courts approved attorneys' fees of approximately one-third of the total settlement). (Doc. No. 63 at 5–6; 60 at 26–27.) The court also previewed that it would make a final determination on the reasonableness of the requested fee amount by performing a lodestar cross-check. (Doc. No. 63 at 6; 60 at 27.)

Class counsel contends that a fee award of one-third of the common fund is reasonable here for several reasons. In their motion for final approval of attorneys' fees, plaintiffs assert that a fee above the 25% benchmark is warranted here because class counsel "obtained an excellent result" for the class despite the "uncertainty surrounding Plaintiffs' ability to prove their claims given the unpredictability associated with class certification as well as complex jury trials" and the risks associated with plaintiffs' claims discussed above. (Doc. No. 68 at 12.) In addition, class counsel contend that they showed "great skill, thoroughness, and diligence" in investigating and litigation this action, as evidenced by their analysis of thousands of pages of informal discovery and creation of a damage model. (*Id.*) Further, counsel notes that this litigation was pursued on a purely contingency-fee basis, requiring class counsel to invest significant time and

money on behalf of the class despite a risk of non-payment due to the evolving law and other risks described in the pending motion. (*Id.* at 13.) Class counsel expended approximately 850 hours working on this case. (*Id.*) Absent successful resolution, none of this attorney time would have been compensated. (*Id.*) In addition, class counsel incurred almost $22,000 in out-of-pocket expenses litigating the case over a five-year period. (*Id.*)

The court agrees that consideration of all these factors support a finding that the requested fee award is fair and reasonable. Moreover, the court notes that the absence of any objections to the settlement and the single request for exclusion from the settlement also supports the award of the attorneys' fees sought in this case. (*See id.* at 9.) The class notice specifically advised class members that class counsel would seek $150,000 from the gross settlement amount for attorneys' fees. (*Id.* at 8.) Therefore, plaintiffs' request for attorneys' fees appears to have the support of the class and that support clearly weighs in favor of the requested award and its approval.

The court next turns to the lodestar amount, in order to cross-check the reasonableness of the requested attorneys' fee award. Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. 06-cv-04149-MMM-SHx, 2008 WL 8150856 (C.D. Cal. July 21, 2008)). Moreover, beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier is often applied. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 Newberg on Class Actions § 14.7 (stating that courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting 4 Newberg on Class Actions § 14.7).

/////

Here, class counsel asserts that 846.49 attorney hours were expended in litigating this case, and estimates approximately 856.49 hours total will be expended by the time this case is fully resolved.  (Doc. No. 68 at 13.)  In calculating their lodestar, class counsel asked the court to employ a blended hourly rate of at least $483.  (*See id.* at 13.)  In the submitted declarations, class counsel provides detail regarding the lodestar figure:  noting the name of each attorney who contributed work to the case, the year they were admitted to the bar, the total number of hours each spent working on the case, and an hourly rate commensurate with the individual background, training, and experience of the attorney.  (Doc. Nos. 68-2, 68-9.)  Counsel seeks hourly rates ranging from $625–$850 for partners, $350–$450 for associates, $250–$300 for paralegals, and $150 for legal secretaries.  (Doc. Nos. 68-2 at 21; 68-9 at 13.)  Class counsel assert that these rates are reasonable and have been approved in a similar certified class action.  (Doc. Nos. 68-2 at 22; 68-9 at 9–10, 13.)  The undersigned has previously accepted similar hourly rates as reasonable for lodestar cross-check purposes.  *See Singh v. Roadrunner Intermodal Servs., LLC*, No. 1:15-cv-01497-DAD-BAM, 2019 WL 316814, at *10 (E.D. Cal. Jan. 24, 2019) (accepting hourly rates of between $370 and $495 for associates, and $545 and $695 for senior counsel and partners); *Mathein v. Pier 1 Imports (U.S.), Inc.,* No. 1:16-cv-00087-DAD-SAB, 2018 WL 1993727, at *11 (E.D. Cal. Apr. 27, 2018) (accepting hourly rates of between $475 and $575 for associates, and $675 and $750 for senior counsel and partners); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017) (accepting hourly rates of between $330 and $550 for associates, and $500 and $720 for partners).  Here, the court adopts the hourly rates provided by class counsel for lodestar cross-check purposes as appropriate.[2]

Additionally, counsels' declarations are sufficient to establish the number of attorney hours worked on this matter.  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail

---

[2]  Since this hourly rate will be used solely for the purpose of cross-checking the percentage of the common fund awarded as attorneys' fees, the court need not define precisely the appropriate rates for this district.

neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (quoting *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014)). Here, counsel represents that 846.49 hours have been spent by all attorneys, paralegals, and legal secretaries on this case. (Doc. No. 68 at 13.) Combining the hours counsel represented they spent on the case with the applicable hourly rate, the lodestar base figure here is $409,297.75. To reach the amount of $150,000 in fees that class counsel has requested here, a negative multiplier of approximately 0.366 would be applied to that lodestar.

For the reasons set forth above, the court concludes that the lodestar cross-check supports the requested award of $150,000 in attorneys' fees, an amount equal to one-third of the total fund in this case.

**B.      Expenses of Class Counsel**

Additionally, class counsel seeks to recover the costs expended on this litigation. Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for: "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id.*

Here, class counsel requests reimbursement of their actual expenses incurred in the amount of $21,859.44. (Doc. No. 68 at 14.) The court has reviewed class counsel's declarations, which attest to the costs they incurred, and finds all the expenses incurred to be quite reasonable. Accordingly, the court will approve their reimbursement of expenses in the amount requested.

**C.      Incentive Award**

"Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). However, the decision to approve such an award is a matter within the court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Generally speaking, incentive awards are meant to "compensate class representatives

for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . . [C]oncerns over potential conflicts may be especially pressing where, as here, the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [her] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant "reputational risk" by bringing suit against their former employers. *Rodriguez*, 563 F.3d at 958–59. The district court must evaluate such awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Courts of the Ninth Circuit have typically found incentive awards of $5,000 to be "presumptively reasonable." *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 457, 463 (9th Cir. 2000) (endorsing $5,0000 service awards to named representatives); *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 246 (N.D. Cal. 2015) (collecting cases); *In re Toys R Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470–72 (C.D. Cal. 2014) (awarding plaintiffs $5,000 each "consistent with the amounts courts typically award as incentive payments"). Higher amounts can be appropriate, such as in employment actions, where a plaintiff risks retaliation or blacklisting by bringing suit against her employer. *See, e.g.*, *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011).

Here, plaintiff Maciel and plaintiff Bonilla each seek an incentive award of $7,500 for their services as class representatives in this action. (Doc. No. 68 at 15.) As the court noted in its order granting preliminary approval, an award of $7,500 amounts to nearly nine times the average amount a Class Claimant could expect to receive from the settlement. (Doc. Nos. 63 at 6; 60 at 28–29.) Plaintiff Maciel has declared that he spent more than 50 hours over the past seven years collecting and reviewing records, assisting counsel with the investigation and gathering of information, maintaining regular contact with class counsel to discuss that case status and progress, and reviewing the settlement. (Doc. Nos. 68-17 at ¶ 8; 68-18 at 2–3.) Plaintiff Bonilla has declared that he spent approximately 25 to 35 hours performing those same tasks. (Doc. No. 68-16 at ¶¶ 4–10.) Class counsel notes plaintiffs expended significant time and effort prosecuting this case on behalf of the class and the collective action. (Doc. No. 68 at 15.)

Nonetheless, in the court's view plaintiffs Maciel and Bonilla have failed to provide persuasive reasons as to why their requested incentive awards should be approved given the disparity between the requested amounts and the settlement's average award to the class and collective members. Accordingly, the court finds service awards of $6,500 for plaintiff Maciel and $5,000 for plaintiff Bonilla are fair and reasonable and will authorize those incentive award amounts.

**D.      Settlement Administrator Costs**

The court previously approved the appointment of Simpluris, Inc. as the settlement administrator in this action. (Doc. Nos. 60 at 31; 63 at 7–8.) According to the declaration of Jeremiah Kincannon, case manager at Simpluris, the total cost for administration of this settlement, including fees incurred and future costs for completion is $10,890.00. (Doc. No. 68-19 at ¶ 12.) The court finds these administration costs reasonable and will direct payment in the requested amount.

**CONCLUSION**

For all of the reasons stated above:

1.      Plaintiffs' motion for final approval of the class action settlement (Doc. No. 68-1) is granted and the court approves the settlement as fair, reasonable, and adequate;

2. Plaintiffs' motion for attorneys' fees and costs and incentive awards (Doc. No. 68) is granted, and the court awards the following sums:

    a. Class counsel shall receive $150,000.00 in attorneys' fees and $21,859.44 in expenses;

    b. Plaintiff Maciel shall receive $6,500.00 as an incentive payment;

    c. Plaintiff Bonilla shall receive $5,000.00 as an incentive payment; and

    d. Simpluris Inc. shall receive $10,890.00 in settlement administration costs and expenses;

3. The parties are directed to effectuate all terms of the settlement agreement and any deadlines or procedures for distribution set forth therein;

4. This action is dismissed with prejudice in accordance with the terms of the parties' fifth amended settlement agreement, with the court specifically retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement; and

5. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: __**May 5, 2021**__

                                             UNITED STATES DISTRICT JUDGE